Argued February 1; affirmed March 14, 1944

GRAHAM et al. v. TALENT SAWMILLS, Inc., et al.

(146 P. (2d) 752)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*Porter J. Neff,* of Medford (Neff & Frohnmayer, of Medford, on the brief) for appellants.

*Gus Newbury,* of Medford, for respondent.

BELT, J.

This suit was commenced September 10, 1941, primarily to cancel a bill of sale duly recorded in Jackson

county on June 13, 1941, which instrument purports to convey to the defendant Talent Sawmills, Inc., a corporation, certain sawmill machinery and equipment. From a decree that the defendant company is the owner of the personal property in question, the plaintiffs appeal.

The plaintiffs, Alfred Graham and his three sons, Edmund, Ralph, and Theodore, a copartnership doing business under the firm name and style of A. Graham & Sons Lumber Co., on April 5, 1939, leased to the defendant company certain sawmill machinery, fixtures and equipment at a rental of $1,200 for the year 1939 and $1,500 for 1940, payable in monthly instalments. Lessee was given the option, during the term of the lease which expired December 31, 1940, to purchase the sawmill machinery and equipment for $5,000, the rentals paid to be applied on the purchase price. In the event the option was exercised and credit for rentals allowed on the purchase price, the balance "will be then payable * * * unless other terms be then agreed upon."

At the time this lease and option was given, the plaintiffs were indebted to the defendant E. F. Peer, as evidenced by their promissory note in his favor in the sum of $3,400. Peer resided in Los Angeles, California, and all negotiations hereafter mentioned were carried on by mail.

Upon execution of the lease, the defendant company went into possession of the property and has ever since continued in such possession. The real property upon which the sawmill was located at the time of the execution of the lease was owned by the Bagley Canning Company.

On October 20, 1939, the plaintiffs assigned the lease and option to the defendant Peer and also executed a chattel mortgage on the property in controversy to secure, as they allege, the payment of the promissory note above mentioned. At said time a bill of sale was executed by plaintiffs and placed with Peer in escrow to be delivered by him to the defendant company in the event the option was duly exercised and the payments made in full on the purchase price. At this juncture it is well to note that the written assignment on its face did not purport to be given as collateral security. This instrument, as to the defendant company, was an absolute and unqualified assignment of the lease and option.

On the same day that this assignment to Peer was made—October 20, 1939—the plaintiffs wrote to the defendant company the following letter:

"Talent, Oregon, October 20, 1939.
"Talent Sawmills Inc.,
Talent, Oregon.
Gentlemen:

"This is to give you formal notice that I have today executed a Bill of sale of the sawmill properties described in Lease with Option of Purchase of April 5, 1939, to be used if and when you should decide to make a final purchase of this property, also an assignment of this lease to E. F. Peer.

"All payments on same to be made to him, it being understood that there has been up to and included October 1939, total payments made of $1,-050.00, including prepayment of December 1939 rental.

"Also rentals beginning November 1939 will first be used to retire the following claims in such

amounts as may be authorized by me, and listed approximately as follows:

| | |
|---|---|
| Oregon State Accident Insurance | $ (103) |
| Bagley Canning Co. | $ ( 85) |
| Social Security Bureau | $ ( 54.32) |
| Talent Gasoline Station | $ ( 92). |

Yours truly,

(Sgd.)  Alfred Graham
Edmund A. Graham
Ralph Graham
Theodore R. Graham.''

The defendant lessee, pursuant to the directions of the plaintiffs, made regular monthly rental payments to Peer, who applied the same in payment of the promissory note and other indebtedness of the plaintiffs. On December 23, 1940, the defendant began negotiations with Peer to purchase the leased property but was unable to agree with him as to the amount of the monthly payments covering the balance of the purchase price. However, on January 9, 1941, Peer and the defendant company agreed upon the amount of the monthly instalments to be paid and the first payment was thereupon made.

Plaintiffs assert that the option to purchase was not exercised prior to the expiration of the lease and that Peer had no authority, after December 31, 1941, to accept any payments from the defendant company nor to deliver a bill of sale to it. The defendant contends that the option was exercised prior to the expiration of the lease on ''terms then agreed upon'' between Peer and it; that plaintiffs ratified the acts of Peer; and that plaintiffs, by reason of their conduct, should be estopped from asserting title to the property in controversy.

Plaintiffs' position in this case is void of equity. Notwithstanding defendant has paid to Peer, in keeping with their express order, the full amount of the purchase price, they not only seek cancellation of the bill of sale delivered by their escrow agent to defendant but demand that the defendant company be charged with the reasonable rental of the sawmill machinery from January 1, 1941.

In the early part of January, 1941, plaintiffs learned that the defendant had purchased the sawmill but did not know upon what terms. Why did they not then ask the defendant about it? Defendant was undoubtedly acting in good faith and continued to pay the agreed instalments of $200.00 each month on the purchase price. In May or June, 1941, plaintiff Alfred Graham was informed by F. M. McKean, president of the company, that such payments to Peer were being made on the purchase price. Graham testified that he told McKean, "You had no right to make any transaction, you didn't exercise the right of your possession, and you know you had to live up to that paper." Graham, however, did not demand possession of the property nor make any further protest prior to the commencement of this suit in September. Thereafter, the defendant purchased the sawmill site from the Bagley Canning Company for $3,000, and made extensive improvements of the property valued in the aggregate at $4,125. Two of Alfred Graham's sons, Theodore and Edmund, were employed at the mill while these improvements were being made and undoubtedly knew that the sawmill had been purchased but did nothing to assert their alleged rights.

Viewing the evidence in the light most favorable to the plaintiffs, it is clear that they knew in May or

June, 1941, that defendant had paid to Peer since January 1, 1941, monthly instalments on the purchase price aggregating $1,800, and that such payments were being credited on their indebtedness.

Assuming, but not deciding, that the option was not exercised prior to the expiration of the lease, plaintiffs will not be permitted to stand by with full knowledge of the transaction between Peer and the defendant and, after the full amount of the purchase price has been paid, invoke the aid of equity to foreclose the rights of the defendant. Neither will plaintiffs be permitted to accept the benefit of payments made to Peer and then assert that he was not authorized to receive the same. It is a clear case of ratification and estoppel. Authorities are not deemed necessary to support the well settled equitable principles involved herein.

The decree of the circuit court is affirmed. Defendant-respondent is entitled to costs and disbursements.